**Michele THOMPSON, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 8, 1997.

Decided July 1, 1997.

---

**7.** As the trial court based its decision on jurisdiction, we decline to address the demurrer.

Before COLINS, President Judge, and FRIEDMAN, J., and LORD, Senior Judge.

COLINS, President Judge.

Michele Thompson (Petitioner) petitions for the review of an order of the Secretary of the Department of Public Welfare (Department) determining that Petitioner has not met the regulatory requirements to establish an Employment Development Plan (EDP) to obtain child-care benefits while she pursues Licensed Practical Nurse (LPN) training.[1] We reverse.

Petitioner and her three small children receive cash assistance. In 1995, she applied to the Delaware County Assistance Office (CAO) for a special allowance for child care while undergoing a one-year course in LPN training. Just prior to making this application, Petitioner had been vocationally tested at the Delaware County Office of Employment and Training where she scored well and was recommended for LPN training. She was also accepted into an LPN training program. Petitioner's desire to pursue LPN training was self-initiated, and tuition for her training would apparently be paid from county resources. Adjudication of welfare hearing officer, pp. 2–3; Notes of Testimony (N.T.), pp. 31–32.

Child care is a supportive service available for participants in the ETP, a program operated by the Department for public assistance recipients consisting, among other things, of work, job search, training, and education activities. 55 Pa.Code §§ 165.46, 165.2. Recipients of public assistance are required to enroll in the ETP unless exempt. 55 Pa. Code § 165.1(a). Exempt recipients, however, may volunteer to participate in the ETP and will be given the "highest priority for services to the extent that resources permit" when they do. *Id.* Because Petitioner personally provides care for a child of two years of age and younger, she is exempt from enrollment in the ETP. 55 Pa.Code § 165.21(c)(5). She therefore approached the CAO as a volunteer.

Anne Vaughan, Chester, for petitioner.

Jean E. Graybill (Argued), Senior Assistant Counsel, and Diana C. Tarvin, Assistant Counsel, Harrisburg, for respondent.

---

1. An EDP is a plan developed for participants in the Department's Employment and Training Program (ETP) that establishes employment goals and sets forth the services to be provided by the Department and the activities to be undertaken by the participant. 55 Pa.Code § 165.2.

The CAO denied Petitioner's request for supportive services, deeming Petitioner to be "job ready." This assessment was based upon a brief interview wherein Petitioner filled out a form (Form PA 1530) by checking off that she was a high school graduate; that she attended education beyond high school for two years; and that she had been trained to do clerical and packaging work. In a second form, Petitioner indicated that she had skills in typing, filing, and packaging; that she had worked as a rehabilitation specialist until the job was terminated, that she worked in telemarketing until she left to have a child; and that she was then employed on an on-call basis as an unskilled production worker stuffing envelopes for a mailing service. This employment paid so little, however, that Petitioner continued to collect cash assistance without any reduction. Nevertheless, the CAO determined that Petitioner's education and employment history rendered her "job ready" and therefore, according to the CAO, ineligible for participation in the ETP.

Petitioner appealed, and a hearing was held before a welfare hearing officer (hearing officer). The Department presented testimony that Petitioner was not approved for supportive services because she indicated on her application that she was a high school graduate, had some job skills, and also had a job. The Department also presented testimony that the Petitioner was offered the alternative of remaining employed part-time at the mailing service and continuing to receive unreduced public assistance as she had been doing. (N.T., p. 9.) The extent of Petitioner's education or stated skills or job success was never explored by the CAO. The Department admitted at the hearing that the CAO made no assessment of Petitioner's job skills or aptitudes but relied only on the brief information set forth in the Petitioner's application. Adjudication of welfare hearing officer, p. 3. Petitioner testified that her interview with the CAO lasted approximately ten minutes. (N.T., p. 29.)

The Department also offered testimony that self-initiated plans can form the basis of an EDP if there is a need for the recipient to acquire skills or training to remove him or herself from public assistance. The CAO determined, however, that because Petitioner was already employed, it "didn't see that there was a need." (N.T., p. 20.)

Petitioner testified that she was twenty-eight years old; her children were aged one, two, and three. She further testified that the father of her children was sentenced to prison and owed approximately $12,000 in unpaid child support. (N.T., pp. 27–28.) At the time she made application to the CAO, Petitioner was employed at $5.00 an hour "stuffing paper into envelopes," but by the time of the hearing this job had terminated because of lack of work. (N.T., p. 30.) Petitioner stated that if she had the necessary skills, she would have a job that could take care of her family; but she lacked the skills and was seeking them. *Id.* She further testified that she became interested in LPN work when she helped care for a relative and observed the work of the nurses and nursing aides who attended to the patient. (N.T., p. 31.) Petitioner testified that she attended nearly two years of college at Lincoln University, but left because she failed to maintain a passing grade.[2] She testified that she failed because it was her first experience away from home and that she then lacked focus. (N.T., p. 27.)

The hearing officer found as a fact that the CAO had failed to assess Petitioner for job skills and aptitudes and that the caseworker for the CAO who interviewed Petitioner had no training as a vocational counselor. The hearing officer further determined that Petitioner was credible in her desire to remove herself and her children from the welfare rolls, and that she was motivated to seek supportive services for the duration of the one-year LPN course to further this goal. The hearing officer determined, however, that Petitioner's current skills and "status" would not allow her to achieve her goal.

**2.** Attached to the record is a transcript of Petitioner's record at Lincoln University showing a final grade point average of 1.95.

Adjudication of welfare hearing officer, p. 4. The hearing officer concluded:

> It would appear to this Hearing Officer based on regulations cited in this adjudication that the Appellant [Petitioner] was a prime candidate for the CAO to develop an EDP, self-initiated or not, with a potential to be a success story for any individual who wished to break the cycle of dependency. The Appellant's current skills and aptitudes are not sufficient for the Appellant to be self-supportive and she would continue to rely on some type of Public Assistance to maintain and support her and her children.
>
> The Appellant met the criteria listed in 55 Pa.Code Section 165.31(d) to establish an EDP and the criteria in 55 Pa.Code Section 165.31(e) for self-initiated training. The Hearing Officer concludes that the CAO incorrectly denied the Appellant special allowances for supportive services as they did not take all this into consideration.
>
> The appeal of the Appellant is sustained.

*Id.*

The hearing officer's order was affirmed by the Department's Office of Hearings and Appeals (OHA), but then reversed by the Secretary of the Department by way of a brief order that concluded:

> The County Assistance Office has properly determined that appellant is job ready and does not meet the regulatory requirements to establish an Employment Development Plan. 55 Pa.Code Section 165.31(d) and (e); Cash Assistance Handbook 135–9[.]

Order of the Secretary of the Department, November 5, 1996. This petition for review followed.

 This Court's scope of review is limited to determining whether the Department's final adjudication was in accordance with law, constitutional rights were violated, or all necessary findings of fact were supported by substantial evidence. *Holloway v. Department of Public Welfare,* 67 Pa.Cmwlth. 6, 445 A.2d 1329 (1982).

 In overturning the orders of the hearing officer and the OHA, the Secretary did not state, and does not argue now, that the findings of fact of the hearing officer were not supported by substantial evidence.[3] Rather, the Secretary argues that the findings of fact actually support the Department's position that Petitioner is "job ready." This argument is again based upon the fact that Petitioner has some education and some job experience that indicate job skills. The Secretary argues that the Department's regulations and the Department's policy as set forth in the Department's Cash Assistance Handbook provide that a recipient who is "job ready" is ineligible for the development of an EDP. The Secretary further argues that the Department has the discretion to reject a recipient volunteer from participation in the ETP. Applicable regulations, and even the Cash Assistance Handbook, do not support these interpretations, however.

First, it is noted that the Department's regulations do not define the concept of "job ready." Both the hearing officer and the Secretary relied upon the Department's regulations at 55 Pa.Code § 165.31(d) and (e) in arriving at their different conclusions. These regulations discuss considerations to be made in developing an EDP. They do not, however, discuss "job readiness" as defined by the Department in its argument. Section 165.31(d) provides:

> (d) *EDP.* Final approval of the EDP rests with the Department. The EDP is not considered a contract. Factors to be considered in developing the EDP include:
>
> (1) Available program resources.
>
> (2) The client's previous education and training.
>
> (3) The client's supportive services needs.
>
> (4) The client's skills level and aptitudes.
>
> (5) Local employment opportunities.
>
> (6) The client's goals and interests, to the extent possible.

3. The welfare hearing officer is the ultimate finder of fact in public assistance cases. 55 Pa.Code § 275.4(h); *Northwestern Institute of Psychiatry v. Department of Public Welfare,* 99 Pa.Cmwlth. 213, 513 A.2d 495 (1986).

55 Pa.Code § 165.31(d). Section 165.31(e) provides generally that "self-initiated education or training may be approved as an individual's EDP" except in certain circumstances not present in this case. 55 Pa.Code § 165.31(e).

Contrary to the assertions of the Department, Section 165.31(d) does not provide that a person with some education or some job experience is automatically ineligible for participation in the ETP or the development of an EDP. Rather, Section 165.31(d) sets forth factors to be considered in arriving at an appropriate EDP. Education and job experience, rather than being eliminating factors under Section 165.31(d), may be factors that help determine whether an EDP will or will not be successful. In fact, the Department in a prior case determined that a recipient's *lack* of a high school education supported a determination that the recipient's proposed course of study would not be successful. *See Burwell v. Department of Public Welfare*, 51 Pa.Cmwlth. 374, 414 A.2d 443 (1980).

▨▨▨ The Department also relies upon its Cash Assistance Handbook as establishing a policy stating that a volunteer recipient who has a high school diploma and any form of job skill is "job ready" and thus ineligible for participation in the ETP. (*See* N.T., p. 9.) The Cash Assistance Handbook is not a duly promulgated regulation of the Department and therefore does not have the weight of authority.[4] Notwithstanding, even this source does not explicitly state that a person is automatically ineligible for participation in the ETP if he or she has a high school diploma or some job skills. Page 135–9 of the Cash Assistance Handbook states that a "client is 'job ready' if he checks the block 'Find a Job' on the PA 1530 and *one* of the following conditions exists: ... He is trained for a specific job [or] He graduated from high school...." (Emphasis in original.) Page 135–10 of the Handbook further states

that "[i]f the client is determined job ready and is referred to Job Center *and* does not need supportive services, the PA 1530 serves as the EDP." (Emphasis added.)[5]

Thus, the Department's stated policy does not explicitly make ineligible individuals who have education and job skills. The individual must have checked the box stating that he or she was searching for a job; and even if an individual is deemed "job ready," such a person may still need supportive services as suggested by the language on page 135–10. In fact, a recipient who applies for services and is deemed "job ready" is nevertheless a participant in the ETP, as the PA 1530 serves as an EDP in accordance with Department policy.

Therefore, the Department's regulations and policies do not support its position that a volunteer in the ETP is ineligible for the development of an EDP and supportive services based solely on the fact that this person has a high school diploma and some job skills. Nor do they support the Department's position that the Department may exclude recipients from participating in the ETP. In fact, the regulations clearly provide that exempt recipients who are volunteers in the ETP "will be given the highest priority for services to the extent resources permit." 55 Pa.Code § 165.1(a).

The Department also argues that the regulations draw a distinction between "enrollees" of the ETP and "participants" in the ETP that permits the Department, in its discretion, to exclude enrollees from becoming participants. All recipients, unless exempt under the regulations, are required to enroll in the ETP. 55 Pa.Code § 165.1. A recipient is a participant in the ETP if she or he is actively engaged in a mutually agreed upon employment, education, or training activity. 55 Pa.Code § 165.2. These regulations do not provide, or even suggest, howev-

---

4. A regulation, as an exercise of a delegated power to make law, is binding, whereas a statement of policy is only interpretive and not binding upon the reviewing court. A statement of policy is persuasive, however, if it tracks the meaning of the governing statute. *Pennsylvania Department of Health v. North Hills Passavant Hospital*, 674 A.2d 1141 (Pa.Cmwlth.1996).

5. The PA 1530 is a Job Readiness Assessment form that nonexempt clients and volunteers must complete when applying for participation in the ETP. Cash Assistance Handbook, p. 135–8. Petitioner did not check the box for "Find a Job" on this form; rather, she checked the box "Enroll in Job Training." (Exhibit C–3.)

er, that the Department has the discretion to exclude a recipient from participating in the ETP. Moreover, with regard to volunteers such as Petitioner, the regulations use the terms "enroll" and "participate" somewhat interchangeably. Section 165.1(a) provides that "[a]n exempt individual may volunteer to be enrolled in the ETP," and further states that "[e]nrollees may volunteer to participate in the ETP." Section 165.21(b) provides that "[a] person who is exempt may volunteer to participate in the ETP." Therefore, the Department has no regulatory basis to conclude that it may exclude Petitioner from participating in the ETP.

Furthermore, the Department's characterization of Petitioner as "job ready" appears at odds with the regulatory description of Petitioner as "exempt" from mandatory participation in the ETP because she is a parent who cares for very young children. The categories for exemption from mandatory participation in the ETP listed at 55 Pa.Code § 165.21(c), including the exemption applicable to Petitioner, describe conditions that would prohibit or inhibit training and eventual employment (illness, incapacity, etc.). Thus, while the Department's regulations determine that Petitioner is essentially not job ready based upon her parental obligations, the Department has, in contradictory fashion, determined her to be job ready because of her education and work background. The Department's testimony at the hearing indicated that it was only because of the *fact* that education and work history were stated in the forms that Petitioner completed did the Department assess her as job ready; there is no evidence that the Department considered Petitioner's children at all in making the assessment.

This omission is not small, because the purpose of the ETP is not to insure that a recipient is able to obtain any job at any wage. Rather, the purpose of the ETP is to "break the cycle of welfare dependency." 55 Pa.Code § 165.1(b). This purpose is echoed in the legislation governing the Department's regulations; it declares that the Commonwealth's public assistance program is maintained to "promote the self-sufficiency of all the people of the Commonwealth." Section

401(a) of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 401(a). Moreover, the Commonwealth receives federal funding for use in its public assistance program; and at the times relevant to this matter the Commonwealth participated in the federal "Job Opportunities and Basic Skills Training Program," whose purpose is to "assure that needy families with children obtain the education, training, and employment that will help them avoid long-term welfare dependence." 42 U.S.C. § 681(a). Under both the federal and Commonwealth mandates, therefore, the legislative intent is to move recipients away from public assistance dependency.

■ When reviewing the validity of an agency's interpretation of its own regulations, a court must determine whether (1) the agency's interpretation is consistent with the regulation and (2) the regulation is consistent with the statute under which it is promulgated. *Pelton v. Department of Public Welfare*, 514 Pa. 323, 523 A.2d 1104 (1987). The Department contends that it may exclude a recipient from participation in the ETP under the aforementioned regulations based upon the fact that the recipient has a high school education and/or a "job skill." Thus, the Department reads restrictive language into its regulations where none appears, and this restrictive interpretation is not necessarily molded to achieve the Code's purpose of decreasing dependency on public assistance. A policy that designates an individual as "job ready" and ineligible for supportive services based on the circumstance that the individual has a high school diploma and some job skills, without any further investigation, ignores the broader principle that the ETP is to aid in promoting self-sufficiency. Clearly, the Department must make a more searching inquiry as to whether an applicant's education and job skills are adequate to enable that person to achieve self-sufficiency. This inquiry must necessarily include a consideration, which the Department appeared to ignore in this case, that the applicant is the custodial caretaker of young children.

The hearing officer did not ignore the individual circumstances and background of Petitioner, however, and found her to be a motivated individual with a reasonable plan to achieve self-sufficiency. Further, the hear-

ing officer determined that Petitioner's proposed EDP—one year of child support during the duration of the one year of LPN training—met the factors for developing an EDP as set forth in 55 Pa.Code § 165.31(d). Contrary to the assertions of the Department, these factors do not exclude Petitioner or her plan. Petitioner has the education, aptitude, and desire to successfully complete LPN training (factors 2, 4, and 6); she requires child care to achieve this goal (factor 3); and the Department did not furnish any evidence that program resources were not available or that local employment opportunities would not permit Petitioner to move from welfare dependency following training, or that Petitioner's current skills would allow Petitioner to move from welfare dependency in the local employment climate (factors 1 and 5). Moreover, as a volunteer, Petitioner is to be accorded the "highest priority" for services. 55 Pa.Code § 165.1(b). We note that the Department has never argued that Petitioner's proposed EDP would not likely lead to the self-sufficiency of Petitioner and her children. The Department argues, without citation to authority, that the burden to prove the efficacy of the proposed plan lies with Petitioner. It is the Department's initial burden, however, to establish its case. 55 Pa.Code § 275.4(g).

▄▄▄ The Department argues, finally, that any decision regarding approval of EDPs rests solely within the Department's discretion. Approval of training programs for assistance recipients generally lies within the Department's administrative discretion, which discretion may not be challenged absent proof of fraud, bad faith, manifest abuse of discretion, or a purely arbitrary execution of duty. *See Wright v. Department of Public Welfare*, 48 Pa.Cmwlth. 413, 409 A.2d 966 (1980); *Williams v. Department of Public Welfare*, 56 Pa.Cmwlth. 157, 424 A.2d 585 (1981). The Department's discretion, however, cannot be based upon an erroneous or contradictory interpretation of regulations; it cannot be contrary to the intent of the Code or the regulations; and it may not ignore the findings of fact of the welfare hearing officer. Further, the cases cited by the Department in support of its argument that its discretion cannot be disturbed in this case are all clearly distinguishable.[6]

In this case, the Secretary committed an error of law by interpreting the Department's regulations as permitting the Department to reject a volunteer recipient from participating in the ETP and developing for that individual an EDP, particularly where the Department's regulations give highest priority to such individuals. The Secretary also committed an error of law by interpreting 55 Pa.Code § 165.31(d) as compelling the denial of an EDP with supportive services for a volunteer recipient who has a high school diploma and some form of job skill. Although the final approval of an EDP rests within the discretion of the Department, that discretion is manifestly abused when the ap-

**6.** In *Wright*, this Court sustained the Department's denial of special cash allowances to enable the petitioner to take a four-month training program in business management. The cash allowance requested by the petitioner was available only in conjunction with a training plan of the Department for the individual. The petitioner, however, had already completed her Department-approved training plan by obtaining her bachelor's degree from Temple University. Also unlike the present case, the Department's action was sustained by the Office of Hearings and Appeals. In *Burwell*, this Court sustained the Department's denial of special cash allowances requested by petitioner to attend a course in principles of management and ownership. We determined that the Department did not abuse its discretion in denying these benefits because it clearly articulated cogent reasons for the denial, including the fact that the Department deemed the course of little value in helping the petitioner move off of welfare because she had *not* graduated from high school, had no prospect of financial support to start a business, and was expecting the birth of a child during the term of the course. In *Williams*, this Court sustained the Department's denial of special cash allowances for petitioner to attend a nurse assistant training course because the petitioner had failed to complete at least four previous Department-approved training programs. Under this circumstance, we found no abuse of discretion. In *Nolf v. Department of Public Welfare*, 69 Pa.Cmwlth. 398, 452 A.2d 574 (1982), this Court sustained the denial of special allowances for additional training following the petitioner's completion of a Department approved and funded course of training. This Court found no abuse of discretion where the Department had determined that the petitioner had already completed a sufficient training program *and* that petitioner's new proposed course of study *would not likely decrease the petitioner's need for public assistance.*

proval is denied because of a misinterpretation of applicable regulations that would automatically deny participation in the ETP and a formulation of an EDP. The Department advanced no argument that the hearing officer's decision is contrary to the Code or a correct reading of the Department's regulations. Further, the Department advanced no argument that the proposed EDP would not help promote the self-sufficiency of Petitioner; and, as stated previously, the Department's argument that Petitioner is "job ready" did not take into consideration the goal of self-sufficiency for a single mother of three small children. Moreover, the Department advanced no concrete alternative to Petitioner's proposed EDP except that she retain a low paying job and remain, with her children, on cash assistance, which alternative is contrary to the purposes of the Code and the Department's regulations.

Accordingly, the order of the Secretary is reversed.

### ORDER

AND NOW, this 1st day of July, 1997, the Order of the Secretary of the Pennsylvania Department of Welfare in the above-captioned matter is hereby reversed.